Horencio FERNANDEZ
SAENZ, Appellant,

v.

The STATE of Texas, Appellee.

No. B14–89–00986–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Nov. 1, 1990.
Dissenting Opinion of Justice Sears
Nov. 29, 1990.

Mary E. Conn, Houston, for appellant.

J. Harvey Hudson, Houston, for appellee.

Before ROBERTSON, SEARS and DRAUGHN, JJ.

## OPINION

ROBERTSON, Justice.

The jury rejected appellant's not guilty plea to the possession of cocaine; he admitted the previous conviction alleged for enhancement, and the trial judge assessed punishment at confinement for eight years. Issues on appeal concern the admissibility of evidence of a claimed extraneous offense, jury argument and the sufficiency of the evidence. We affirm.

After having conducted a lengthy surveillance for four or five days of a certain apartment in Pasadena, during which time appellant was observed entering and/or exiting the apartment several times (once by using a key), officers of that city secured a search warrant and, shortly after midnight, proceeded to execute it. Appellant was observed on the outside of the apartment; he got into the passenger side of an automobile with a another person who drove "about two driveways down still in the apartment project." After appellant alighted from the automobile, officer Dumas went to a nearby convenience store where he met "a subject" and recovered from him a quarter ounce of cocaine. Dumas directed other officers at the apartment project to place appellant under arrest. Upon searching him, marked money belonging to the Pasadena Police Department, which Dumas had released less than an hour before, was recovered from appellant. During the search of the apartment which the evidence shows was leased in the name of two females, one of whom was present, the officers found both cocaine and marijuana. Among other articles recovered were small "ziploc clear plastic bags" containing residue and small amounts of powdered cocaine, hemostats, marijuana smoking pipes, a cigarette roller, razor blades, a funnel and a glass tube all containing a white powder cocaine residue. Some of the drugs and drug paraphernalia were found in the east bedroom where the officers also found a final electricity bill addressed to appellant from the power company for another address and a Texas Vehicle Registration receipt issued in the appellant's name. Appellant did not testify at trial. His sister testified he did not live in the searched apartment but another apartment in the project. She stated he and his roommate were friends with the occupants of the searched apartment.

▪ In his seventh point of error appellant contends the evidence is insufficient to show that he had care, custody and control over the apartment where the drugs were found. Viewing the evidence in the light most favorable to the verdict, as we are required to do, *Butler v. State*, 769 S.W.2d 234, 239 (Tex.Crim.App.1989), we find the above evidence amply sufficient to support the conviction. Accordingly, appellant's point of error is overruled.

In his first and third points of error, appellant contends the trial court erred in admitting the testimony concerning the recovery of the marked money from appellant and the recovery of the quarter ounce of cocaine from the "subject." In his second and fourth points of error appellant contends the court erred in permitting the prosecutor to refer to the recovery of the money and the cocaine in argument to the jury. Appellant argues the evidence was inadmissible because it showed an extraneous offense. We do not agree.

We first notice, as pointed out by the state in it's brief, that the record does not specifically show that the quarter ounce of cocaine was recovered from "the subject", which officer Dumas met at the convenience store, rather than appellant. However, based upon the testimony of Dumas that he "recovered a quarter ounce of cocaine" and "ordered [appellant] taken into custody and the money recovered," we agree that appellant's conclusion that the cocaine was recovered from "the subject"

is a reasonable deduction from the evidence and we will so construe it.

■ In order to sustain a conviction for possession of a controlled substance, the state must show that the accused exercised care, control and management of the contraband and that the accused knew what he possessed was contraband. *Humason v. State*, 728 S.W.2d 363 (Tex.Crim.App.1987). And where the accused is not in exclusive control or possession of the place where the contraband is located, the court of criminal appeals has held that it cannot be concluded that the accused had knowledge and control over the contraband unless there are additional facts and circumstances linking the accused to the contraband. *Cude v. State*, 716 S.W.2d 46 (Tex. Crim.App.1986).

■ We agree with the state that the evidence that within less than an hour after the police officer released marked money to a "subject", that after appellant was seen in the company of that "subject" the officers recovered from appellant the marked money previously given to the "subject", and from the "subject" a quarter ounce of cocaine was recovered is probative evidence linking appellant to the contraband found in the apartment. *See: Reid v. State*, 749 S.W.2d 903 (Tex.App.—Dallas 1988, pet. ref'd). The trial court did not err in admitting the evidence; consequently, the prosecutor was properly permitted to utilize this evidence in final argument to the jury. Appellant's first four points of error are overruled.

■ In his fifth point of error appellant contends the court erred in permitting the prosecutor during argument "to urge the jury to speculate on the basis for the search warrant that led to the discovery of the drugs found in the apartment." The basis for his complaint is that during her final argument, the prosecutor made five references to the fact that the police officers had a search warrant. On two of the occasions, the prosecutor stated that the search warrant was "based on something" and, during another reference to the search warrant, she stated "you can use your reasoning as to why an officer had a search warrant." Appellant argues that since hearsay relating to probable cause is not admissible before the jury, the argument of the prosecutor concerning the search warrant invited the jury to speculate on matters not in evidence before them, as condemned by *Everett v. State*, 707 S.W.2d 638 (Tex.Crim.App.1986) and cases cited therein.

While the argument that the officers had a search warrant was proper (because the evidence showed they had served one) the further argument of the prosecutor that "it must have been based on something" was clearly improper because it invited the jury to speculate on evidence not before them. However, when we view the argument as a whole and in the context in which it was made, we do not find the argument to warrant a reversal. As stated by the court of criminal appeals in *Brooks v. State*, 642 S.W.2d 791 (Tex.Crim.App.1982): "statements by counsel will not constitute reversible error unless, in light of the record as a whole, the statements are extreme or manifestly improper, violative of a mandatory statute, or inject new facts harmful to the accused into the proceeding." Appellant's fifth point is overruled.

Finally, in his sixth point of error, appellant contends the trial court erred in permitting the prosecutor to argue that appellant had something on him at the time of his arrest. The actual comments of the prosecutor; the objection by defense counsel; and the ruling of the court was:

There is a lab report there from a chemist who worked it up with the medical and the scientific analyzation that you have in your possession that goes back with you that you can read and see whether or not the test concluded that what he possessed in that bedroom and what he had on him was cocaine. So all we are asking you to do now—

MR. PINK: I object. It's an improper statement. She said something about what he had on him. The defendant had nothing on him. It's an improper misstatement of the evidence.

THE COURT: The jury has heard the evidence. They will make a determina-

tion of what the facts are. I overrule your objection.

In view of the uncertainty of the testimony concerning from whom the quarter ounce of cocaine was recovered, it appears to us that the ruling of the court was proper—he left the issue for the jury's determination. Appellant's sixth point is overruled.

The judgment of the trial court is affirmed.

SEARS, J., dissents.

SEARS, Justice, dissenting.

I respectfully dissent from the majority opinion.

While criminal law in Texas may at times be uncertain, Texas courts have always uniformly upheld the right of an accused to be tried for the accusation made in the State's pleading and not tried for a collateral crime or for being a criminal in general. *Albrecht v. State*, 486 S.W.2d 97 (Tex. Crim.App.1972).

This is an appeal from a very ordinary drug case. Pasadena police officers set up surveillance of 5150 Red Bluff Road, apartment no. 2603, in Pasadena, Texas. During the five days the apartment was under surveillance, the appellant was seen entering or exiting "two or three times." When the search warrant was executed by Officer Dumas on November 26, 1985, the appellant left the apartment, entered an automobile with another person and drove to a nearby apartment. He was in the driveway of that apartment when Officer Dumas executed the search warrant and directed Officer Smith to arrest the appellant. The appellant was returned to the apartment being searched and was subsequently charged with possession of cocaine found in the apartment.

The testimony at trial revealed that the apartment was not owned, rented, leased or occupied by the appellant. State's witnesses testified that they had never seen the appellant in the possession of the cocaine or of any other drug paraphernalia found in the apartment. They further testified they had never seen the appellant use any drugs or controlled substances, had never seen him in the bedroom where the cocaine was found, and did not check the cocaine, bedroom, or other drug paraphernalia for any fingerprints. There was no testimony or evidence to show that the appellant had at any time exercised any care, control, custody or management of the contraband, nor is there any testimony or evidence that the appellant had knowledge that cocaine was in the apartment searched.

At trial, the State apparently recognized the weakness of their case and the State's attorney attempted to "go behind" the search warrant by questioning Officer Dumas about his suspicions or his probable cause upon which he based his request for a search warrant. Outside the presence of the jury, appellant's counsel objected and reminded the court of the motion in limine that had been filed and that the prejudice resulting from evidence of extraneous offenses would far outweigh any probative value. The State's attorney argued that she anticipated going into a narcotics transaction that took place prior to the execution of the search warrant. In arguing her position to the court, the State's attorney said: "I would state, Judge, it goes to the probative value of it in that the defendant's involvement in something, that involvement with this officer and the drug transaction prior to that, that is very substantial and very probative to the case. It was on the same day, November 26, 1985." The Court responded: "I understand what you are saying, but I think the issue here is that if you have a warrant that was executed with contraband that was seized as a result of that, that's as far back as we need go unless there is some issue raised for the defense contesting the validity of the search warrant." Appellant never contested the validity of the search warrant or the probable cause upon which it was issued.

From the first witness for the State to the final argument of the State's attorney, the State prosecuted and convicted the appellant, not for the crime for which he was charged, but for another *alleged* drug transaction that occurred the same day. In order to understand what occurred regard-

ing the other alleged drug transaction, we must review some of the testimony at trial.

At some point in time, prior to the execution of the search warrant, Officer Dumas apparently gave some marked money to a "subject." The "subject" who received the marked money was never identified nor was he *specifically* referred to at any other place in the record. Although the State questioned Officer Dumas on many occasions about the money he recovered from the appellant when the appellant was arrested, each time the attorney for the appellant vigorously and continuously objected to this testimony of "extraneous offenses" and further objected that "the prejudicial effect would outweigh any probative value." The Court continuously overruled the objections. The jury heard testimony that Officer Dumas had given the marked money to a "subject," that marked money was subsequently recovered from the appellant and that Officer Dumas subsequently recovered some cocaine. The motive and intent of the State was to create the illusion that appellant had sold the cocaine to the "subject" and received marked money in exchange. The State then made reference to this transaction on many other occasions, and in final argument the State's attorney told the jury that this defendant took cocaine out of the apartment and sold it. The State intentionally argued outside the record and encouraged the jury to convict the accused because of the alleged extraneous offense, rather than for the offense with which he was tried.

The majority opinion correctly cites the status of the law in Texas, which requires the State to show that the accused exercised care, control and management of the contraband *and* that the accused knew that what he possessed was contraband. *Humason v. State*, 728 S.W.2d 363 (Tex.Crim. App.1987). Further, the majority opinion acknowledges that where the accused is not in exclusive control or possession of the place where the contraband is located, it cannot be concluded that the accused had knowledge and control over the contraband unless there are *additional facts and circumstances* linking the accused to the con-

traband. *Cude v. State*, 716 S.W.2d 46 (Tex.Crim.App.1986). However, the majority opinion errs, just as the trial court erred, by using the facts of an extraneous offense, which were not in evidence, to convict the accused for the crime for which he was charged. The majority opinion states as follows:

> We agree with the State that the evidence that within less than an hour after the police officer released the marked money to a "subject", that after appellant was seen in the company of that "subject" the officers' recovered from appellant the marked money previously given to the "subject", and from the "subject" a quarter ounce of cocaine was recovered is probative evidence linking appellant to the contraband found in the apartment.

Not only does the majority opinion misstate the testimony and evidence introduced at trial, but the majority also wrongfully concludes that the alleged collateral transaction is "probative evidence linking appellant to the contraband found in the apartment." There is no evidence in this record that in any way connects the contraband found in the apartment to the cocaine "recovered" by Officer Dumas. There is simply no evidence in this record to show that the appellant had any knowledge of any contraband in the apartment, nor is there any evidence that would in any way connect the contraband in the apartment to the cocaine allegedly recovered by Officer Dumas. There is simply no nexus between the two. Also, the evidence showed the apartment was leased to two women and that appellant did not live there. There is no *evidence* that appellant had any knowledge of the contraband in the apartment or that he exercised any control or management of the contraband.

In *Cude*, cited by the majority, the Court of Criminal Appeals reversed a conviction based on evidence much stronger than that presented in this record. Cude answered the door of an apartment, sold a controlled substance to an undercover police officer, then was arrested. The apartment was searched, and Cude was charged with pos-

session of a controlled substance found in the refrigerator. The evidence showed that the apartment was leased to appellant's brother, two other persons were in the apartment at the time of the sale, and there was no clothing or other property "indicating that appellant lived at the residence." *Cude*, 716 S.W.2d at 48. The officer also testified "it appeared that [appellant] was in control of the premises at [the] time." *Id.* at 47. An employee of the Texas Department of Corrections testified appellant told him he stayed in the apartment, but no specific time was mentioned. Nonetheless, the Court of Criminal Appeals held that the testimony of the officer was "pure speculation and creates no more than a suspicion that appellant could have been in joint or exclusive possession of the premises." *Id.* at 48. The court reversed the conviction because "there has been no showing of an affirmative link" between the accused and the contraband substance he was charged with possessing. *Id.* That court also found that absence of an objection was immaterial because the evidence was insufficient to establish guilt.

In the case at bar, the most glaring mistake made by the State, the trial court and the majority is that they assumed facts not in evidence. The majority opinion states that because appellant was seen in the company of the "subject" and that Officer Dumas recovered a quarter ounce of cocaine from the "subject," then the appellant is linked to the contraband found in the apartment. However, there is *no testimony* that the appellant ever met with the "subject" at any time; likewise, there is *no testimony* that Officer Dumas recovered cocaine from the "subject" to whom he had given the marked money.

Officer Dumas testified that just prior to the execution of the search warrant appellant exited the apartment, entered a vehicle as a passenger with another person, drove through the apartment project approximately two driveways south of the apartment to be searched, got out of the vehicle and walked away from the car. The State asked Officer Dumas what the officer was doing and he responded, "I was following him." Officer Dumas then testified that the appellant was standing in the driveway when he went to a nearby convenience store. There was never any allegation or testimony that the other person in the vehicle with the appellant was the "subject" to whom Officer Dumas had given the marked money. The appellant was arrested by Officer Smith who gave no testimony concerning any observed actions on the part of the appellant and certainly no testimony that this appellant ever met with the infamous "subject."

An equally glaring error in the majority opinion is the statement that the officer recovered a quarter ounce of cocaine from the "subject" (creating the impression it was the same "subject" who received the marked money). The only testimony by Officer Dumas concerning any "recovery of cocaine" came in response to the State's questions concerning what he did after observing the appellant standing in the driveway. Officer Dumas responded that he went to a convenience store located just down the street and met *a* subject. He was not asked nor did he testify that this was the same "subject" to whom he had previously given the marked money. The State then asked:

Q. Did you, after going to that convenience store, did you have an occasion then to receive anything in your possession?

A. Yes, I did.

Q. And as a result of that, can you tell me what it was you did?

A. Yes, I ordered Mr. Saenz taken into custody and the money recovered.

Attorneys for the appellant again objected to any extraneous offenses that are not part of the indictment, and again asked the court to rule on a motion in limine concerning the extraneous offenses. He argued that the prejudicial effect of testimony regarding these extraneous offenses far outweighed any probative value and that no issues had been raised which would entitle the State to go into any extraneous offense. The Court overruled the objection and the State then asked:

Q. What did you recover?

A. At that time I recovered a quarter ounce of cocaine.

Q. Did you do anything else after that in the connection that you have just testified to with the search and the arrest of the *defendant?* (emphasis added)

A. No.

There is no testimony at any other part of the record concerning the money, cocaine recovered, or the "subject." Again, there is simply no evidence in the record that Officer Dumas ever met again with the "subject" to whom he had given the marked money, or that the cocaine he recovered was recovered from that same "subject." In light of the testimony outlined above and subsequent testimony showing that the "cocaine recovered" weighed less than 28 grams, the jury might easily have assumed, wrongfully, that this cocaine was found on the appellant's person and thereby found him guilty as charged. It is common knowledge to the State, the defense, the trial court and this appellate court that police officers use the term "subject" to refer to many types of persons that they encounter during the investigation of a crime. It has no special meaning to denote any particular type of person. Therefore, the state has wholly failed to show any completed drug transaction that involves this appellant, and the use of this alleged transaction against the appellant is error. *See Albrecht*, 486 S.W.2d at 100.

As the State admits in its brief, and as the majority acknowledge in the opinion, the alleged dope deal between the appellant and a "subject" is the only probative link tying the appellant to the contraband in the apartment. Obviously, the trial court erred and appellant's first four points of error should have been sustained.

The trial court also erred in allowing the State to argue that the money found on the appellant was evidence of his guilt of possessing the cocaine found in the apartment. Also, the State's repeated use of the extraneous offense as the probable cause behind the search warrant was extremely prejudicial and wholly improper. The State candidly admits in its brief: "If the testimony concerning the marked money did not refer to an extraneous offense, such testimony was irrelevant and should not have been admitted into evidence." However, the State concludes that the error, if any, was not prejudicial, and in fact contends that it was clearly harmless. Not surprisingly, the majority opinion agrees that the arguments of the prosecutor were "clearly improper because it invited the jury to speculate on evidence not before them." However, the majority opinion, like the State, concludes that the error was harmless.

The State based its entire case on the alleged extraneous drug transaction and appellant's constant and vigorous objections fell on deaf ears. The State argued to the jury that the defendant would try to deny having custody or control over the apartment but argued that he would not have had the marked money if he didn't have the "goods" first. She argued that the officer had the search warrant and it was "based on something." She said the officer had the marked money, followed defendant in the car with the subject and then recovered cocaine from the subject and the money from the defendant. She concluded her argument to the jury by stating: "All these things taken together with the search warrant, the quarter ounce of cocaine and the marked money.... [defendant] committed the offense and should be found guilty of possession of a controlled substance." Despite all the timely and specific objections made by the attorney for appellant, the trial court closed its eyes to the error and allowed this appellant to be convicted of a crime the State fell far short of proving beyond a reasonable doubt.

The State and the majority agree that the State must prove that the accused exercised care, control, and management of the contraband, and that he knew that what he possessed was contraband. Further, where the accused was not in exclusive control or possession of the place where the contraband was located, both the State and the majority agree that the State must prove knowledge and control over the contraband by showing additional facts and

circumstances which link the accused to the contraband. Yet the State and the majority also agree that the only evidence linking the appellant to the contraband in the apartment is the alleged extraneous offense wherein they both assume facts not in evidence. It is difficult to comprehend how the State and the majority would allow the jury to convict the appellant on facts not in evidence, and then both agree that any error in the use of facts not in evidence was harmless beyond a reasonable doubt. I cannot concur with my brethren in this.

Before evidence of collateral crimes is admissible, a relationship must be shown between such evidence and the evidence necessary to prove that the accused committed the crime for which he stands charged. *Albrecht*, 486 S.W.2d at 100. Evidence showing the commission of an extraneous offense is usually excluded, not because it is without legal relevance, but because it is inherently prejudicial, tends to confuse the issues, and forces the accused to defend himself against charges without prior notice they would be used against him. *Crank v. State*, 761 S.W.2d 328 (Tex. Crim.App.1988) (en banc) *cert. denied,* —— U.S. ——, 110 S.Ct. 209, 107 L.Ed.2d 162 (1989). It is also axiomatic that evidence of an extraneous offense is not admissible *unless* it is shown to be relevant to the charges alleged by the State *and* that the accused actually committed the extraneous offense. *Phillips v. State*, 659 S.W.2d 415, 418 (Tex.Crim.App.1983). Therefore, the introduction of evidence of the alleged extraneous offense was reversible error because:

1. it was not shown to have been committed by appellant;
2. it provides no probative link to the contraband found in the apartment;
3. it's prejudicial effect is self evident and overwhelming; and
4. it obviously confused the issues (the state never could establish from whom the cocaine was recovered and the majority opinion on page three said it was reasonable to conclude it was recovered from the "subject" and on page five of the opinion the majority said it

was proper for the state to tell the jury it was recovered from the appellant).

In this case, the trial court failed to examine the facts and determine whether the extraneous offense was admissible, relevant, and committed by the accused, *and then* make a determination as to whether its prejudicial value outweighed its probative potential. *See Allridge v. State*, 762 S.W.2d 146, 161 (Tex.Crim.App.1988); *cert. denied,* 489 U.S. 1040, 109 S.Ct. 1176, 103 L.Ed.2d 238 (1989). *Castillo v. State*, 739 S.W.2d 280 (Tex.Crim.App.1987); *cert. denied,* 487 U.S. 1228, 108 S.Ct. 2889, 101 L.Ed.2d 924 (1988). *Albrecht*, 486 S.W.2d at 100.

I would sustain all the points of error raised by the appellant, reverse the judgment of the trial court and remand this case to the trial court with instructions to acquit.